UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMLESH BANGA,<br><br>    Plaintiff,<br><br>   v.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br><br>    Defendant. | Case No. 14-cv-03038-WHO<br><br>**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 29 |

## INTRODUCTION

Plaintiff Kamlesh Banga, proceeding pro se, brings this action against defendant Equifax Information Services LLC ("Equifax"). She alleges that in a prior lawsuit she brought against Equifax in this district, *Banga v. Equifax Info. Servs. LLC*, No. 09-cv-04807-JSW, Equifax filed excerpts from two of her credit reports with the district court and Ninth Circuit without first redacting from the reports her Social Security number and other personal identifying information. She claims that in doing so, Equifax violated the California Consumer Credit Reporting Agencies Act, other provisions of the California Code, and her common law and state constitutional privacy rights. Banga also accuses Equifax of failing to exclude her name from promotional lists it distributed to third party credit providers, despite her repeated requests that her name be excluded from the lists.

Equifax moves for judgment on the pleadings on each of Banga's five causes of action. Banga's claims arising from the filing of her credit reports with the district court and Ninth Circuit are barred by California's litigation privilege. Her claims arising from Equifax's distribution of promotional lists including her name are also defective. Equifax's motion is GRANTED.

# BACKGROUND

## I. BANGA'S PRIOR LAWSUITS AGAINST EQUIFAX

This is the third in a series of lawsuits that Banga has brought against Equifax in this district. She filed the first one on June 18, 2008. *Banga v. National Credit Union Administration*, No. 08-cv-03015-MMC (*Banga I*). On October 6, 2009, Judge Chesney granted Equifax's motion for summary judgment. *Id.* at Dkt. No. 167. Shortly thereafter, Banga and the remaining defendant entered a settlement agreement and Judge Chesney dismissed the case. *Id.* at Dkt. Nos. 172, 179.

Banga filed the second lawsuit on October 8, 2009. *Banga v. Equifax Info. Servs. LLC*, No. 09-cv-04807-JSW (*Banga II*). Banga claimed, among other things, that Equifax had violated a provision of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.11(d)(1), and an analogous provision of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(e). Both statutes concern the circumstances under which a credit reporting agency may disclose information about a consumer to a third party for the purposes of a credit transaction "not initiated by the consumer," i.e., for promotional purposes. *See* Cal. Civ. Code § 1785.11(d)(1); 15 U.S.C. § 1681b(e).

Banga alleged that on April 14, 2003, she "had a promotional block placed on her [credit] report so that junk mail solicitations for credit would be unable to utilize the information on her credit report," and that on July 10, 2003, she "sent a written request that her credit report should be excluded permanently [from] all preapproved credit offer . . . mailing lists." *Banga II*, Dkt. No. 69 ¶ 9. She alleged that Equifax "had sold her credit report for promotional purposes to . . . numerous entities after [she] had placed a promotional block on her credit report." *Id.* ¶ 10.

On January 25, 2011, Judge White granted Equifax's motion for summary judgment, holding that Banga's claims were barred by the applicable statutes of limitations, and that she had failed to produce sufficient evidence of either damages or willfulness, as required to support her claims under both the CCRAA and the FCRA. *Banga II*, Dkt. No. 108. In ruling on willfulness, Judge White found that Banga "failed to proffer any evidence whatsoever of [Equifax's] practices and failed to dispute the fact that [Equifax] never received [the written request she sent on July 10,

1    2003]." *Id.* at 5. The Ninth Circuit affirmed on appeal. *Banga II*, Dkt. No. 122.

2    **II.    BANGA'S CURRENT COMPLAINT**

3        Banga filed this action on December 30, 2013 in the Superior Court of California for the
4    County of San Francisco. Dkt. No. 1-2. She served Equifax with her amended complaint on June
5    18, 2014. Dkt. No. 1-1 ("FAC"). On July 2, 2014, Equifax removed the case to federal court.
6    Dkt. No. 1.

7        Banga's claims are based on two separate courses of conduct by Equifax. *See* FAC ¶ 6;
8    Opp. at 2. First, she alleges that Equifax "displayed [her] Social Security number, date of birth,
9    [and] current and past addresses to the general public by filing [her] partial credit reports of
10   August 14, 2007 and July 20, 2004 with the Ninth Circuit and district court's dockets without
11   seal." FAC ¶ 6. Equifax initially displayed the reports on October 26, 2010 by filing them as an
12   exhibit attached to the Declaration of Vicki Banks (the "Banks Declaration") submitted in support
13   of its motion for summary judgment in *Banga II*. FAC ¶ 12. Equifax displayed the reports a
14   second time by including the Banks Declaration in the excerpts of record it filed with the Ninth
15   Circuit on appeal. FAC ¶ 11.

16       Banga states that she first noticed that the credit reports had been filed "without seal" on
17   October 30, 2012, more than two years after Equifax first submitted them in *Banga II*. FAC ¶ 11.
18   On October 31, 2012, Banga wrote a letter to Equifax requesting that the reports be immediately
19   removed from the district court and Ninth Circuit dockets. *Id.* ¶ 12. Equifax did not respond. *Id.*
20   ¶ 12. On December 3, 2012, Banga again requested that the reports be removed, but again without
21   success. *Id.* ¶ 13.

22       On July 2, 2014, shortly after being served with Banga's amended complaint, Equifax filed
23   motions with the district court and Ninth Circuit seeking to strike the offending reports from the
24   courts' records and to replace them with properly redacted versions. *See Banga II*, Dkt. No. 126;
25   *Banga v. Equifax Info. Servs. LLC*, No. 11-15460, Dkt. No. 35 (9th Cir. July 2, 2014) (*Banga*
26   *Appeal*). Both motions were granted, and the reports have since been struck from the courts'
27   records. *Banga II*, Dkt. Nos. 75, 127; *Banga Appeal*, Dkt. Nos. 16, 36. Equifax refiled the Banks
28   Declaration with a properly redacted exhibit on August 8, 2014. *Banga II*, Dkt. No. 129. The

United States District Court
Northern District of California

1    exhibit in question is twelve pages long; Banga's now-redacted personal identifying information
2    appears on pages six and twelve. *See id.*

3        The second basis for Banga's claims is her allegation that Equifax "impermissibly
4    disseminated [her] credit report information for promotional purposes to third parties
5    notwithstanding the fact that [her] name had been blocked permanently from all preapproved
6    credit offer mailing lists." FAC ¶ 6. She states that on April 14, 2003, she called (888) 567-8688
7    and "elected to exclude her name from being used in connection with any credit or insurance
8    transaction . . . that is not initiated by her." *Id.* ¶ 8. She subsequently received a Notice of
9    Election to Opt-Out Permanently, which she signed and returned on July 10, 2003. *Id.* ¶ 9. She
10   states that she returned the notice to the address "jointly established and maintained by nationwide
11   credit reporting agencies." *Id.*

12       On December 8, 2012, Banga received a copy of her credit reports and learned that
13   Equifax had provided her credit information to the following entities: American Preferred
14   Lending, AT&T Wireless, DMI Financial, Inc., First Ohio Bank & Lending, Inc., Network Capital
15   Funding, TransAmerican Financial Corp., and Xcelerated Investments. FAC ¶ 14. Banga
16   contacted Equifax and "asked for an explanation . . . as to why her credit reports had been sold for
17   promotional purposes since she had elected to opt-out permanently from all preapproved credit
18   offer mailing lists." *Id.* In addition, she "advised Equifax to cease immediately to sell her credit
19   reports for promotional purposes."

20       On January 8, 2013, Banga discovered that Equifax had again sold her credit information,
21   this time to Newday Financial, LLC. FAC ¶ 15. She "wrote another letter to Equifax stating that
22   it must cease selling her credit reports for promotional purposes and again ask[ing] for an
23   explanation as to why it contin[ued] to sell [her] credit reports for promotional purposes since she
24   had opted out permanently from all preapproved credit offer mailing lists." *Id.* Banga states that
25   she subsequently discovered that Equifax had also provided her credit information to
26   Fingerhut/Webbank and to Residential Home Funding Corp. *Id.*

27       Based on these allegations, Banga brings five causes of action against Equifax: (i) "breach
28   of election to opt-out" in violation of Cal. Civ. Code § 1785.11(d)(1); (ii) violation of Cal. Civ.

1    Code § 1798.85(a)(1);[1] (iii) common law invasion of privacy; (iv) violation of California's Unfair
2    Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (v) violation of the right
3    to privacy protected by article I, section 1 of the California Constitution. FAC ¶¶ 19-44.

4    Equifax filed this motion for judgment on the pleadings on March 28, 2015. Dkt. No. 29.
5    I heard argument from the parties on May 27, 2015. Dkt. No. 48.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009).

"Analysis under Rule 12(c) is substantially identical to analysis under [Federal Rule of Civil Procedure 12(b)(6)] because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir.2012) (internal quotation marks omitted). While "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid . . . dismissal" under this standard. *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez,* 735 F.3d 1060, 1076 (9th Cir. 2013).

---

[1] Cal. Civ. Code § 1798.85(a)(1) makes it illegal to "[p]ublicly post or publicly display in any manner an individual's social security number." Cal. Civ. Code § 1798.85(a)(1). The statute defines "publicly post" and "publicly display" as "to intentionally communicate or otherwise make available to the general public." *Id.*

5

1  "Where a court grants . . . a motion for judgment on the pleadings under Rule 12(c), leave
2  to amend should be freely given if it is possible that further factual allegations will cure any
3  defect." *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1113 (N.D. Cal. 2013).

## DISCUSSION

### I. CLAIMS BARRED BY THE LITIGATION PRIVILEGE

California's litigation privilege, codified at Cal. Civ. Code § 47(b), "generally protects from tort liability any publication made in connection with a judicial proceeding." *Jacob B. v. Cnty. of Shasta*, 40 Cal.4th 948, 952 (2007). "Although originally enacted with reference to defamation, the privilege is now held applicable to any communication, whether or not it amounts to a publication, and [to] all torts except malicious prosecution." *Silberg v. Anderson*, 50 Cal.3d 205, 211-12 (1990) (internal citations omitted). The privilege extends "to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved."[2] *Id.* at 212. "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Id.*

The purposes of the privilege include "afford[ing] litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions," "encourag[ing] open channels of communication and zealous advocacy," and "avoid[ing] unending litigation." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1063 (2006). These and other "salutary policy reasons for [the privilege] supersede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings." *Id.* at 164 (internal quotation marks omitted). Accordingly, the privilege "is broadly applied and doubts are resolved in [its] favor." *Ramalingam v. Thompson*, 151 Cal. App. 4th 491, 500 (2007). "It has been held to immunize

---

[2] A publication is considered "permitted by law" in this context not when the specific publication itself is permitted by law, but when the publication belongs to "a category of communication permitted by law." *Jacob B.*, 40 Cal.4th at 958-59.

6

defendants from tort liability based on theories of abuse of process, intentional infliction of emotional distress, intentional inducement of breach of contract, intentional interference with prospective economic advantage, negligent misrepresentation, invasion of privacy, negligence, and fraud." *Silberg*, 50 Cal.3d at 215 (internal citations omitted).  In *Jacob B.*, the California Supreme Court held that it "applies even to a constitutionally based privacy cause of action" brought under article I, section 1 of the California Constitution.  40 Cal.4th at 961-62.

To the extent that Banga's claims are based on the disclosure of her Social Security number and other personal identifying information during the course of *Banga II* and the subsequent Ninth Circuit appeal, they are barred by the litigation privilege.  Each disclosure of her personal identifying information was a communication (1) that was made in a judicial proceeding (2) by a litigant (3) to achieve the objects of the litigation and (4) that had some connection or logical relation to the action.  *See Silberg*, 50 Cal.3d at 212.  While the disclosure of at least some of that information was not specifically "permitted by law," the disclosure was made in the context of a "category of communication permitted by law," i.e., an exhibit attached to a declaration submitted in support of a motion for summary judgment.  *See Jacob B.*, 40 Cal.4th at 958-59.  In these circumstances, the privilege applies.  *See G.R. v. Intelligator*, 185 Cal. App. 4th 606, 616-19 (2010) (in appeal from postmarital dissolution proceedings, holding that litigation privilege barred husband's tort claims arising from wife's filing of his unredacted credit report in violation of Rule 1.20 of the California Rules of Court, which requires the redaction of Social Security and financial account numbers).

There are exceptions to the scope of the litigation privilege.  As noted above, it does not apply to malicious prosecution claims.  In addition, the California Court of Appeal, as well as the majority of federal district courts to address the issue, have held that it "cannot be used to shield violations of the [Rosenthal] Act." *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 337 (2009); *see also, e.g., Picard v. ABC Legal Servs., Inc.*, No. 14-cv-04618-RMW, 2015 WL 3465832, at *4-5 (N.D. Cal. June 1, 2015); *Bartell v. Nat'l Collegiate Student Loan Trust 2005-3*, No. 14-cv-04238-RS, 2015 WL 1907337, at *4 (N.D. Cal. Apr. 27, 2015); *Farber v. JPMorgan Chase Bank N.A.*, No. 12-cv-02367, 2014 WL 68380, at *8 (S.D. Cal. Jan. 8, 2014);

*Ansari v. Elec. Document Processing Inc.*, No. 12-cv-01245-LHK, 2013 WL 4647621, at *9-10 (N.D. Cal. Aug. 29, 2013); *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1096-97 (E.D. Cal. 2013).

The court in *Komarova* reasoned that allowing the privilege to immunize Rosenthal Act violations "would effectively vitiate the [Act] and render the protections it affords meaningless." *Id.* at 338 (internal quotation marks omitted). The court noted "the ease with which the Act could be circumvented if the litigation privilege applied," as perpetrators of unfair debt collection practices would then be able to immunize their conduct "merely by filing suit on the debt." *Id.* at 340. Meanwhile, certain provisions of the Act – i.e, those that apply specifically to conduct occurring in judicial proceedings – would be effectively "nullified by the privilege." *Id.* The court concluded that "the Act would be significantly inoperable if it did not prevail over the privilege where, as here, the two conflict." *Id.* As a result, the court "applie[d] the familiar principle of statutory construction that, in cases of irreconcilable conflict, the specific statute prevails over the general one" and removed the Rosenthal Act from the scope of the privilege. *Id.* at 338.

Here, however, Banga does not bring any claims under the Rosenthal Act or other statutes that would be rendered "significantly inoperable" if the privilege is applied to them. Moreover, allowing the privilege to bar Banga's claims arising from Equifax's failure to properly redact her personal identifying information does not leave her without any effective remedy. She could have moved to seal the offending credit reports, for example, and if she had a good faith basis for believing the circumstances warranted them, she could have sought sanctions. *See Rusheen*, 37 Cal.4th at 1064-65 (holding that litigation privilege barred abuse of process claims arising from allegedly false proofs of service, in part because there were "adequate alternative remedies," including moving to set aside the default judgment, moving to quash the writ of execution, and filing a claim of exemption from execution); *G.R.*, 185 Cal. App. 4th at 618 (noting that husband "had alternative remedies" to combat wife's filing of his unredacted credit report, including having the report sealed and seeking sanctions). Given the availability of these alternative avenues of addressing the situation, "[i]t was unnecessary, and contrary to the principles of the litigation

8

1  privilege, for [Banga] to file a separate action to seek redress." *G.R.*, 185 Cal. App. 4th at 618.

2  In supplemental briefing on the litigation privilege, Banga relies on another limitation on
3  the privilege's scope: that "whether [it] applies to an action for breach of contract turns on whether
4  its application furthers [its] underlying [policies]." *Wentland v. Wass*, 126 Cal. App. 4th 1484,
5  1492 (2005); *accord Yardley v. ADP TotalSource, Inc.*, No. 13-cv-04639, 2014 WL 1496333, at
6  *2 (C.D. Cal. Apr. 4, 2014) (litigation privilege did not render futile proposed counterclaim for
7  breach of nondisclosure agreement); *USA Wheel & Tire Outlet # 2, Inc. v. United Parcel Serv.*
8  *Inc.*, No. 13-cv-00403, 2014 WL 197733, at *3-4 (C.D. Cal. Jan. 14, 2014) (litigation privilege did
9  not bar claim for breach of confidentiality agreement); *T.T. ex rel. Susan T. v. Cnty. of Marin*, No.
10 12-cv-02349-WHA, 2013 WL 308908, at *5-6 (N.D. Cal. Jan. 25, 2013) ("[a]fter weighing the
11 public policy interests," concluding that the privilege "should not apply here because otherwise
12 any effort to enforce an otherwise valid litigation release could be hamstrung by invocation of the
13 litigation privilege"). This line of cases does not help Banga, however, because each of her causes
14 of actions sounds in tort, not breach of contract.

15 Insofar as Equifax's motion for judgment on the pleadings is aimed at Banga's claims
16 arising from the filing of her credit reports with the district court and Ninth Circuit, the motion is
17 GRANTED. This completely disposes of Banga's second cause of action for violation of Cal.
18 Civ. Code § 1798.85(a)(1), which is based exclusively on the filing of her credit reports with the
19 district court and Ninth Circuit. *See* FAC ¶¶ 25-29; Opp. at 9. Because Banga's other causes of
20 action appear to be based, at least in part, on her alternative theory that Equifax "impermissibly
21 disseminated [her] credit report information for promotional purposes," FAC ¶ 6, I address those
22 causes of action individually below.

23 **II.    FIRST CAUSE OF ACTION: CAL. CIV. CODE § 1785.11(d)(1)**

24 Banga alleges that Equifax violated Cal. Civ. Code § 1785.11(d)(1) by filing her credit
25 reports with the district court and Ninth Circuit, and by providing them to various third party
26 credit providers. FAC ¶ 20-21. Under section 1785.11(d)(1),

27 > [a] consumer may elect to have his or her name and address
> excluded from any list provided by a consumer credit reporting
28 > agency pursuant to [Cal. Civ. Code § 1785.11(b)(2)] by notifying

9

> the consumer credit reporting agency, by telephone or in writing, through the notification system maintained by the consumer credit reporting agency pursuant to [Cal. Civ. Code § 1785.11(e)], that the consumer does not consent to any use of consumer credit reports relating to the consumer in connection with any transaction that is not initiated by the consumer.

Cal. Civ. Code § 1785.11(d)(1).

Cal. Civ. Code § 1785.11(b)(2) describes one of the circumstances under which a credit reporting agency may disclose information about a consumer for the purposes of a credit transaction "not initiated by the consumer." Cal. Civ. Code § 1785.11(b)(2). It allows disclosure where, among other prerequisites, "[t]he proposed transaction involves a firm offer of credit," and "the consumer has not elected pursuant to [section 1785.11(d)(1)] to have the consumer's name excluded from lists of names provided by the consumer credit reporting agency for purposes of reporting in connection with the potential issuance of firm offers of credit." Cal. Civ. Code § 1785.11(b)(2). Only two categories of information may be disclosed pursuant to Cal. Civ. Code § 1785.11(b)(2): "[t]he name and address of the consumer," and "[i]nformation pertaining to a consumer that is not identified or identifiable with a particular consumer." Cal. Civ. Code § 1785.11(b)(2)(A)-(B).

Cal. Civ. Code § 1785.11(e), also cited in section 1785.11(d)(1), provides in relevant part:

> Each consumer credit reporting agency that furnishes a prequalifying report pursuant to [Cal. Civ. Code § 1785.11(b)] in connection with a credit transaction not initiated by the consumer shall establish and maintain a notification system, including a toll-free telephone number, that permits any consumer, with appropriate identification and for which the consumer credit reporting agency has a file, to notify the consumer credit reporting agency of the consumer's election to have the consumer's name removed from any list of names and addresses provided by the consumer credit reporting agency, and by any affiliated consumer credit reporting agency, pursuant to [Cal. Civ. Code § 1785.11(b)(2)].

Cal. Civ. Code § 1785.11(e).

Equifax contends that Banga's claims under Cal. Civ. Code § 1785.11(d)(1) are preempted by the FCRA. Mot. at 7-8. The general rule is that the FCRA does not preempt state laws except to the extent that those laws are "inconsistent with [its] provision[s], and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a). There are, however, several exceptions to this general rule. *See* 15 U.S.C. § 1681t(b). One of those exceptions is set out in 15 U.S.C. § 1681t(b)(1)(A),

10

1   which prohibits states from imposing any "requirement or prohibition . . . with respect to any

2   subject matter regulated under . . . subsection (c) or (e) of section 1681b of this title, relating to the

3   prescreening of consumer reports." 15 U.S.C § 1681t(b)(1)(A). Equifax argues that Cal. Civ.

4   Code § 1785.11(d)(1) imposes requirements with respect to subject matter regulated under 15

5   U.S.C. §§ 1681b(c) and (e) and is thus preempted.

6       Equifax is right. Cal. Civ. Code § 1785.11(d)(1) and 15 U.S.C. §§ 1681b(c) and (e) reflect

7   nearly identical frameworks for the regulation of the promotional use of consumer credit

8   information. Using language that in large part overlaps with that of Cal. Civ. Code §

9   1785.11(d)(1), 15 U.S.C. § 1681b(e)(1) provides that

> [a] consumer may elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency under [15 U.S.C. § 1681(c)(1)(B)] in connection with a credit or insurance transaction that is not initiated by the consumer, by notifying the agency in accordance with [15 U.S.C. § 1681(e)(2)] that the consumer does not consent to any use of a consumer report relating to the consumer in connection with any credit or insurance transaction that is not initiated by the consumer.

15 U.S.C. § 1681b(e)(1).

15 U.S.C. § 1681(c)(1)(B), like Cal. Civ. Code § 1785.11(b)(2), explains that a credit reporting agency may disclose information about a consumer for the purposes of a transaction "not initiated by the consumer" where, among other prerequisites, "the transaction consists of a firm offer of credit," and "there is not in effect an election by the consumer, made in accordance with [15 U.S.C. § 1681b(e)], to have the consumer's name and address excluded from lists of names provided by the agency." 15 U.S.C. § 1681(c)(1)(B). Also like Cal. Civ. Code § 1785.11(b)(2), only limited categories of information may be disclosed pursuant to 15 U.S.C. § 1681b(c)(1)(B): "(A) the name and address of a consumer; (B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and (C) other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity." 15 U.S.C. § 1681b(c)(2).

15 U.S.C. § 1681(e)(2) describes the two ways in which a consumer may notify a credit reporting agency of her decision to opt-out: "through the notification system maintained by the

agency;" or "by submitting to the agency a signed notice of election form issued by the agency." 15 U.S.C. §1681(e)(2).

In sum, Cal. Civ. Code § 1785.11(d)(1) and 15 U.S.C. §§ 1681b(c) and (e) regulate virtually identical subject matter, and regulate it in virtually the same way to boot. Under 15 U.S.C. § 1681t(b)(1)(A), this means that Cal. Civ. Code § 1785.11(d)(1) is preempted. *See* 15 U.S.C. § 1681t(b)(1)(A) ("No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports.").

That 15 U.S.C. § 1681t(b)(1)(A) refers to "the prescreening of consumer reports" only reinforces this conclusion. Although the FCRA does not define this phrase, courts have used it synonymously with disclosing consumer information for the purposes of credit transactions "not initiated by the consumer," i.e., the subject matter regulated by Cal. Civ. Code § 1785.11(d)(1) and 15 U.S.C. §§ 1681b(c) and (e). *See, e.g., Premium Morg. Corp. v. Equifax Info. Servs., LLC*, No. 07-cv-06349, 2008 WL 4507613, at *2 (W.D.N.Y. Sept. 30, 2008) ("15 U.S.C. § 1681b(c) allows for the 'prescreening' of credit information: a practice which allows a credit reporting agency to 'furnish a consumer report . . . in connection with any credit . . . transaction that is not initiated by the consumer.'"); *Consumer Data Indus. Ass'n v. Swanson*, No. 07-cv-03376, 2007 WL 2219389, at *3 (D. Minn. July 30, 2007) ("15 U.S.C. § 1681b(c) governs '[f]urnishing reports in connection with credit . . . transactions that are not initiated by [a] consumer.' Both parties agree that this is a reference to prescreened reports.").

Because Cal. Civ. Code § 1785.11(d)(1) is preempted, Equifax's motion for judgment on the pleadings on Banga's first cause of action for "breach of election to opt-out" in violation of Cal. Civ. Code § 1785.11(d)(1) is GRANTED.

### III. THIRD CAUSE OF ACTION: COMMON LAW INVASION OF PRIVACY

To establish liability for invasion of privacy based on the public disclosure of private facts, the plaintiff must show: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Grp. W Prods., Inc.*, 18 Cal.4th 200, 214 (1998) (internal quotation marks omitted). A

private fact qualifies as "offensive and objectionable to the reasonable person" where its disclosure would "shock the community's notions of decency." *Ignat v. Yum! Brands, Inc.*, 214 Cal. App. 4th 808, 820-21 (2013) (internal quotation marks omitted); *see also Diaz v. Oakland Tribune, Inc.*, 139 Cal. App. 3d 118, 126 (1983) (cause of action for public disclosure of private facts protects against "publicity [that] is so intimate and unwarranted as to outrage the community's notions of decency").

Liability for invasion of privacy may also be established by a showing of "intrusion." *Shulman*, 18 Cal.4th at 230-31. "[O]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1482 (1986) (emphasis omitted); *accord Shulman*, 18 Cal.4th at 230-31. A cause of action for intrusion "has two elements: (1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person." *Shulman*, 18 Cal.4th at 231.

Banga alleges that Equifax "willfully and unlawfully intruded upon [her] seclusion by displaying her personal information to the general public." FAC ¶ 31. Although the amended complaint is unclear on this point, it appears that Banga bases this cause of action both on Equifax's filing of her credit reports with the district court and Ninth Circuit, and on Equifax's alleged "impermissibl[e] disseminat[ion] of [her] credit report information for promotional purposes." *See* FAC ¶¶ 6, 32-33.

To the extent that Banga's invasion of privacy claims are based on the first theory, Equifax is entitled to judgment as a matter of law because, as discussed above, the claims are barred by the litigation privilege.

The claims also fail to the extent that they are based on the second theory, although for different reasons depending on which specific invasion of privacy tort Banga means to assert. If Banga means to assert a cause of action for public disclosure of private facts, her allegations are insufficient because she has not adequately alleged what, if any, offensive and objectionable private facts were disclosed. Banga states that Equifax disclosed her "credit report information"

and the "personal confidential information contained in her credit reports," but she does not explain what particular information was disclosed or why that information qualifies as offensive and objectionable. *See* FAC ¶¶ 6, 33.

Elsewhere in the amended complaint, Banga alleges that Equifax "provided" or "sold" her "credit reports" to third parties, implying that her entire credit reports were disclosed. *See* FAC ¶¶ 14-15. But this inference is implausible in light of the other allegations in the amended complaint. Banga's principal accusation against Equifax is that it violated Cal. Civ. Code § 1785.11(d)(1) by failing to exclude her name from promotional lists it distributed to third parties pursuant to Cal. Civ. Code § 1785.11(b)(2). The only information that may be disclosed pursuant to Cal. Civ. Code § 1785.11(b)(2) is "[t]he name and address of the consumer," and "[i]nformation pertaining to a consumer that is not identified or identifiable with a particular consumer." Cal. Civ. Code § 1785.11(b)(2)(A)-(B). This is not the sort of information the disclosure of which would "shock the community's notions of decency." *Ignat*, 214 Cal. App. 4th at 820-21. Banga does not allege that Equifax disclosed to any third party anything more than the information allowed by Cal. Civ. Code § 1785.11(b)(2), and except for her references to "credit reports," nothing in the amended complaint indicates that Equifax did. The amended complaint does not support a plausible inference that Equifax disclosed offensive and objectionable facts about Banga.

If, on the other hand, Banga means to assert a cause of action for intrusion, her allegations fail because she has not alleged an "intrusion into a private place, conversation, or matter." *Shulman*, 18 Cal.4th at 231. To show an actionable intrusion, "the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." *Id.* at 232. "The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation, or data source." *Id.* The thrust of Banga's allegations is not that Equifax obtained unwanted access to data about her or otherwise intruded upon a zone in which she had a reasonable expectation of privacy, but rather that it improperly disclosed data about her which it properly possessed. That is not an intrusion.

Equifax's motion for judgment on the pleadings on the third cause of action for common law invasion of privacy is GRANTED.

## IV.     FOURTH CAUSE OF ACTION: UCL VIOLATION

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Banga appears to assert that Equifax violated each of the UCL's three prongs, both by filing her credit reports with the district court and Ninth Circuit, and by including her credit information on its promotional lists. *See* FAC ¶¶ 35-40.

Banga's principal claim under the UCL is based on the following statement, which allegedly appears on Equifax's website:

> We have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to protect the privacy and confidentiality of personal information about consumers. If we believe that a client is using Equifax's information in a manner that does not comply with applicable laws, industry codes or contracts[,] we periodically review our clients' marketing materials to make sure their criteria are consistent with and appropriate for the intended use; we will pursue corrective action, up to and including termination of the relationship; we comply with all contractual restrictions placed on information provided to Equifax. Safeguarding the privacy and security of information, both online and offline, is a top priority for Equifax.

FAC ¶ 10. Banga asserts that "Equifax's conduct was deceptive because the privacy statement provided [on] its website does not advise consumers that Equifax will disclose consumer's personal confidential information to the public." FAC ¶ 36. This claim is clearly aimed at Equifax's filing of Banga's credit reports with the district court and Ninth Circuit. Accordingly, it is barred by the litigation privilege.

To the extent that the amended complaint may be construed to allege other UCL claims, those claims also fail. Banga has not plausibly alleged any conduct by Equifax that amounts to an unlawful, unfair, or fraudulent business practice. Equifax's motion for judgment on the pleadings on the fourth cause of action for violation of the UCL is GRANTED.

## V.     FIFTH CAUSE OF ACTION: STATE CONSTITUTIONAL RIGHT TO PRIVACY

The California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring,

15

possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I § 1. "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1, 39-40 (1994). "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id.* at 37.

Banga's state constitutional invasion of privacy claims fail for essentially the same reasons as her common law invasion of privacy claims. To the extent that they are based on Equifax's filing of Banga's credit reports with the district court and Ninth Circuit, they are barred by the litigation privilege. *See Jacob B.*, 40 Cal.4th at 961-62. To the extent that they are based on Equifax's distribution of Banga's credit information for promotional purposes, the claims fail because Banga has not adequately alleged what, if any, offensive and objectionable facts about her were disclosed to third parties. Nor has she identified any other invasion of privacy "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal.4th at 37. Equifax's motion for judgment on the pleadings on the fifth cause of action for violation of the state constitutional right to privacy is GRANTED.

## CONCLUSION

For the foregoing reasons, Equifax's motion for judgment on the pleadings is GRANTED. Banga shall file her second amended complaint, if any, within thirty days of the date of this order. In her supplemental briefing on the litigation privilege, Banga argues that Equifax violated the stipulated protective order entered in *Banga II* by failing to properly redact her credit reports. *See* Dkt. No. 45. She appears to seek to bring a claim for breach of contract against Equifax on this basis. *See id.* In light of her pro se status, Banga may add a cause of action for breach of contract in amending her complaint. She may also amend her first cause of action for "breach of election to opt out" to bring claims under the FCRA instead of the CCRAA, as she did in the proposed

1 second amended complaint she submitted in conjunction with her opposition brief.  *See* Dkt. No.
2 37-1.
3    **IT IS SO ORDERED**.
4 Dated: June 18, 2015



WILLIAM H. ORRICK
United States District Judge

17