UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMLESH BANGA,<br><br>        Plaintiff,<br><br>    v.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br><br>        Defendant. | Case No. 14-cv-03038-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 86 |

## INTRODUCTION

Plaintiff Kamlesh Banga, proceeding pro se, brings this action against defendant Equifax Information Services LLC ("Equifax") because in a prior lawsuit she brought against Equifax in this district, *Banga v. Equifax Info. Servs. LLC*, No. 09-cv-04807-JSW (N.D. Cal. filed Oct. 8, 2009), Equifax filed excerpts from two of her credit reports with the district court and Ninth Circuit without first redacting from the reports her Social Security number and other personal identifying information. She claims that in doing so, Equifax breached the Stipulated Protective Order in that case, and also violated California Civil Code § 1798.85(a)(1), California's Unfair Competition Law ("UCL"), and her right to privacy under the California Constitution. Separately, she accuses Equifax of violating the Fair Credit Reporting Act ("FCRA") by failing to exclude her name from promotional lists distributed to third-party credit providers despite her repeated requests that her name be excluded from such lists.

Equifax moves for summary judgment on each of Banga's five causes of action. Banga's claims that arise from the disclosure of her personal identifying information in the prior lawsuit are barred by California's litigation privilege, unsupported by the evidence, or both. Accordingly, Equifax's motion for summary judgment on Banga's first, second, fourth, and fifth causes of action – each of which is based exclusively on that allegedly illegal disclosure – is GRANTED. But genuine disputes of material fact remain whether Banga made a telephone call on October 15, 2010 that complied with FCRA requirements to have Equifax exclude her name from promotional lists distributed to third-party credit providers, and whether she suffered damages as a result of

Equifax's breach of that obligation. Equifax's motion for summary judgment on Banga's third cause of action for negligent violation of the FCRA is DENIED, as discussed below.

**BACKGROUND**

**I. BANGA'S PRIOR LAWSUITS AGAINST EQUIFAX**

This is the third in a series of lawsuits that Banga has brought against Equifax in this district.[1] She filed the first one on June 18, 2008. *Banga v. National Credit Union Administration*, No. 08-cv-03015-MMC (N.D. Cal. filed Jun. 18, 2008) ("*Banga I*"). On October 6, 2009, Judge Chesney granted Equifax's motion for summary judgment. *Id.* at Dkt. No. 167. Shortly thereafter, Banga and the remaining defendant entered a settlement agreement and Judge Chesney dismissed the case. *Id.* at Dkt. Nos. 172, 179.

Banga filed the second lawsuit on October 8, 2009. *Banga v. Equifax Info. Servs. LLC*, No. 09-cv-04807-JSW (N.D. Cal. filed Oct. 8, 2009) ("*Banga II*"). Banga claimed, among other things, that Equifax had violated a provision of the FCRA, 15 U.S.C. § 1681b(e), and an analogous provision of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ.Code § 1785.11(d)(1). Both statutes concern the circumstances under which a credit reporting agency may disclose information about a consumer to a third party for the purposes of a credit transaction "not initiated by the consumer," i.e., for promotional purposes. *See* 15 U.S.C. § 1681b(e); Cal. Civ. Code § 1785.11(d)(1). Banga alleged that on April 14, 2003, she "had a promotional block placed on her [credit] report so that junk mail solicitations for credit would be unable to utilize the information on her credit report," and that on July 10, 2003, she "sent a written request that her credit report should be excluded permanently [from] all preapproved credit offer . . . mailing lists." *Banga II*, Dkt. No. 69 ¶ 9. She alleged that Equifax "had sold her credit report for promotional purposes to . . . numerous entities after [she] had placed a promotional block on her credit report." *Id.* ¶ 10.

On January 25, 2011, Judge White granted Equifax's motion for summary judgment, holding that Banga's claims were barred by the applicable statutes of limitations for the FCRA and

---

[1] Banga has also filed a number of other lawsuits in this district against other credit reporting agencies and/or credit providers.

1    CCRAA, and that she had failed to produce sufficient evidence of either damages or willfulness,
2    as required to support her claims under both statutes. *Banga II*, Dkt. No. 108.  In ruling on
3    willfulness, Judge White found that Banga "failed to proffer any evidence whatsoever of
4    [Equifax's] practices and failed to dispute the fact that [Equifax] never received [the written
5    request she allegedly sent on July 10, 2003]." *Id.* at 5.  Thus, Banga had "failed to provide any
6    basis for her conclusory assertions that [Equifax] acted willfully or in reckless disregard of the
7    law." *Id.*  Judge White also found that Banga's claims were time-barred. *Id.* at 4.  The Ninth
8    Circuit affirmed on appeal, finding that the claims were time-barred but not addressing the
9    damages/willfulness issue. *Banga II*, Dkt. No. 122.

## II.    BANGA'S CURRENT CLAIMS AGAINST EQUIFAX

Banga filed this action on December 30, 2013 in the Superior Court of California for the County of San Francisco.  Dkt. No. 1-2.  She served Equifax with her first amended complaint on June 18, 2014.  Dkt. No. 1-1 ("FAC").  On July 2, 2014, Equifax removed the case to federal court.  Dkt. No. 1.

### A.    First Amended Complaint

Banga's claims in her FAC were based on two distinct courses of conduct by Equifax. *See, e.g.,* FAC ¶ 6.  First, she alleged that Equifax "displayed [her] Social Security number, date of birth, [and] current and past addresses to the general public by filing [her] partial credit reports of August 14, 2007 and July 20, 2004 with the Ninth Circuit and district court's dockets without seal." *Id.*  Equifax initially displayed the credit reports on October 26, 2010 by filing them as an exhibit attached to the Declaration of Vicki Banks (the "Banks Declaration") submitted in support of its motion for summary judgment before Judge White in *Banga II*. *Id.* ¶ 12.  Equifax then displayed the credit reports a second time by including the Banks Declaration in the excerpts of record it filed with the Ninth Circuit on appeal. *Id.* ¶ 11.

Banga stated that she first noticed that the credit reports had been filed "without seal" on October 30, 2012, more than two years after Equifax first submitted them in *Banga II*. *Id.*  The next day, Banga wrote a letter to Equifax requesting that the credit reports be immediately removed from the district court and Ninth Circuit dockets. *Id.* ¶ 12.  Equifax did not respond. *Id.*

3

1   On December 3, 2012, Banga again requested that the credit reports be removed, but again without

2   success. *Id.* ¶ 13.

3   On July 2, 2014, shortly after being served with Banga's FAC, Equifax filed motions with

4   the district court and Ninth Circuit seeking to strike the offending credit reports from the courts'

5   records and to replace them with properly redacted versions. *See Banga II*, Dkt. No. 126; *Banga*

6   *v. Equifax Info. Servs. LLC*, No. 11-15460, Dkt. No. 35 (9th Cir. July 2, 2014) ("*Banga Appeal*").

7   Both motions were granted, and the credit reports have since been struck from the courts' records.

8   *Banga II*, Dkt. Nos. 75, 127; *Banga Appeal*, Dkt. Nos. 16, 36. Equifax refiled the Banks

9   Declaration with a properly redacted exhibit on August 8, 2014. *Banga II*, Dkt. No. 129. The

10  exhibit in question is twelve pages long; Banga's now-redacted personal identifying information

11  appears on pages six and twelve. *See id.*

12  The second basis for Banga's claims in the FAC was her allegation that Equifax

13  "impermissibly disseminated [her] credit report information for promotional purposes to third

14  parties notwithstanding the fact that [her] name had been blocked permanently from all

15  preapproved credit offer mailing lists." FAC ¶ 6. I discuss this theory of liability and the relevant

16  facts in detail in Section III of this Order below.

17  The FAC alleged five causes of action against Equifax: (1) "breach of election to opt-out"

18  in violation of California Civil Code § 1785.11(d)(1) (but not in violation of the FCRA);

19  (2) violation of California Civil Code § 1798.85(a)(1);[2] (3) common law invasion of privacy;

20  (4) violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; and (5) violation of the right to

21  privacy protected by Article I, Section 1 of the California Constitution. FAC ¶¶ 19-44.

22  **B.  Prior Order**

23  On June 18, 2015, I issued an order granting Equifax's motion for judgment on the

24  pleadings. Dkt. No. 49 ("Prior Order"). I began by holding that to the extent that Banga's claims

25  were based on the disclosure of her Social Security number and other personal identifying

---

[2] California Civil Code § 1798.85(a)(1) makes it illegal to "[p]ublicly post or publicly display in any manner an individual's social security number." Cal. Civ. Code § 1798.85(a)(1). The statute defines "publicly post" and "publicly display" as "to intentionally communicate or otherwise make available to the general public." *Id.*

information during the course of *Banga II* and the *Banga Appeal*, they were barred by California's litigation privilege. Prior Order at 6-9. This completely disposed of Banga's cause of action under California Civil Code § 1798.85(a)(1), which was based exclusively on the filing of her unredacted credit reports. *Id.* at 9.

I then found that the rest of Banga's claims also failed to the extent that they were based on her second theory of liability, i.e., that Equifax "impermissibly disseminated [her] credit report information for promotional purposes to third parties notwithstanding the fact that [her] name had been blocked permanently from all preapproved credit offer mailing lists." FAC ¶ 6. Her cause of action under California Civil Code § 1785.11(d)(1) was defective because that provision is preempted by the FCRA. Prior Order at 9-12. Her common law invasion of privacy claims failed because she had not plausibly alleged either that any "offensive and objectionable private facts" had been disclosed, or that she had suffered an actionable "intrusion into a private place, conversation, or matter." *Id.* at 12-14 (internal quotation marks omitted). Her state constitutional right to privacy claims failed for essentially the same reasons, and her UCL claims were aimed principally at the allegedly illegal disclosure of her personal identifying information and were either barred by the litigation privilege or implausibly alleged. *Id.* at 15-16.

In light of Banga's pro se status, I gave her leave to amend and specifically allowed her to add claims for breach of contract and for violation of the FCRA. *Id.* at 16.

### C. Second Amended Complaint

Banga's Second Amended Complaint ("SAC") is based on the same two alleged courses of conduct as the FAC, i.e., (1) the disclosure of her Social Security number and other personal identifying information during the course of *Banga II* and the *Banga Appeal*, and (2) the allegedly improper distribution of her credit information for promotional purposes. *See, e.g.,* SAC ¶ 6 (Dkt. No. 50).

The factual allegations in the SAC are substantially similar to those in the FAC, although the causes of action are slightly different. Banga now alleges causes of action for (1) breach of contract, based on Equifax's alleged breach the terms of the Stipulated Protective Order entered in *Banga II* by failing to redact her Social Security number and other personal identifying

5

information from the credit reports; (2) violation of California Civil Code § 1798.85(a)(1), also based on the disclosure of her personal identifying information in *Banga II* and the *Banga Appeal*; (3) violation of the FCRA, 15 U.S.C. § 1681b(e) and 15 U.S.C. § 1681e, based on the allegedly improper distribution of her credit information for promotional purposes; (4) violation of the UCL, based on the disclosure of her personal identifying information in *Banga II* and the *Banga Appeal*; and (5) violation of the right to privacy protected by Article I, Section 1 of the California Constitution, also based on the disclosure of her personal identifying information in *Banga II* and the *Banga Appeal*. *See* SAC ¶¶ 22-51.

Equifax filed this motion for summary judgment on January 20, 2016. Dkt. No. 86 ("Mot."). I heard argument from the parties on February 24, 2016. Dkt. No. 100.

## LEGAL STANDARD

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material where it could affect the outcome of the case. *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing that a material factual issue remains for trial. *Id.* The nonmoving party may not rest on mere allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the record" demonstrating the presence of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party need not show that the issue will be conclusively resolved in its favor. *See Anderson*, 477 U.S. at 248-49. All that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (internal quotation marks omitted). If the nonmoving party cannot produce such evidence, the movant "is entitled to . . . judgment as a matter of law

because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323.

On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise a genuine dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

## DISCUSSION

### I. BANGA'S SECOND, FOURTH, AND FIFTH CAUSES OF ACTION ARE BARRED BY CALIFORNIA'S LITIGATION PRIVILEGE

As alleged in the SAC, Banga's second, fourth, and fifth causes of action – for violation of California Civil Code § 1798.85(a)(1), the UCL, and her right to privacy under Article I, Section 1 of the California Constitution – are each based exclusively on the disclosure of her Social Security number and other personal identifying information in *Banga II* and the *Banga Appeal*. As I explained in the Prior Order, to the extent that these causes of action are based on that disclosure, they are barred by California's litigation privilege. Prior Order at 6-9. Banga offers no persuasive reason to depart from this reasoning, and it continues to apply here. Because the second, fourth, and fifth causes of action are each based exclusively on a theory of liability that is barred by California's litigation privilege, Equifax is entitled to judgment as a matter of law as to them. Its motion for summary judgment as to these causes of action is GRANTED.

### II. EQUIFAX'S ALLEGED BREACH OF THE STIPULATED PROTECTIVE ORDER IN *BANGA II* DOES NOT SUPPORT A CLAIM FOR BREACH OF CONTRACT

Equifax is also entitled to judgment as a matter of law on Banga's first cause of action for breach of contract. The elements of a claim for breach of contract under California law are: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010); *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

Banga's breach of contract claim is based on the theory that Equifax breached the terms of the Stipulated Protective Order in *Banga II* by failing to properly redact her credit reports. *See* SAC ¶¶ 22-26. She highlights sections 3 and 10 of the Stipulated Protective Order, which provide as follows:

> 3. [SCOPE:] The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.
>
> 10. [FILING PROTECTED MATERIAL:] Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.

Stipulated Protective Order §§ 3, 10 (SAC Ex. A).

The Stipulated Protective Order defines "Protected Material" as "any Disclosure or Discovery Material that is designated as 'Confidential' or as 'Highly Confidential – Attorneys' Eyes Only.'" *Id.* § 2.8. It defines "Disclosure or Discovery Material" as "all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced or generated in disclosures or responses to discovery in this matter." *Id.* § 2.2.

Banga's breach of contract claim fails because there is no evidence that Equifax breached the terms of the Stipulated Protective Order. "[T]o determine whether or not a protective order has been violated, courts focus on the terms of the order itself." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 U.S. Dist. LEXIS 11778, 33 (N.D. Cal. Jan. 29, 2014); *see also Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 463 F. Supp. 2d 1073, 1080-81 (C.D. Cal. 2006). "A protective order should be read in a reasonable and common sense manner so that its prohibitions are connected to its purpose." *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 921 (N.D. Cal. 1997).

The very sections of the Stipulated Protective Order highlighted by Banga make clear that it was not breached by the filing of her unredacted credit reports. The Stipulated Protective Order

8

plainly applies only to "Protected Material" and associated information. *Id.* § 3.  There is no indication that the unredacted credit reports filed by Equifax either qualified as Protected Material within the meaning of the Stipulated Protected Order, or contained or revealed information extracted from such material.  Banga does not dispute that she did not produce the credit reports and that they were not designated by either party as "Confidential" or "Highly Confidential."  Nor does she dispute that the credit reports did not reflect any information that had been designated as either "Confidential" or "Highly Confidential" by either party.  This is fatal to her breach of contract claim.  Banga has not shown that Equifax's failure to redact her Social Security Number and other personal identifying information from the credit reports constituted a breach of the Stipulated Protective Order, and she identifies no other basis for the claim.[3]  *See* SAC ¶¶ 22-26.

In addition, Banga's breach of contract theory is barred by California's litigation privilege.  While the privilege "generally protects from tort liability any publication made in connection with a judicial proceeding," *Jacob B. v. Cnty. of Shasta*, 40 Cal.4th 948, 952 (2007), "whether [it] applies to an action for breach of contract turns on whether its application furthers [its] underlying [policies]," *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1492 (2005).  This case-specific approach allows certain breach of contract claims to evade being barred by the privilege, despite involving conduct occurring during the course of litigation.  *See, e.g., id.* at 1494 (litigation privilege did not bar breach of contract claim "based on [the] breach of a separate promise independent of the litigation"); *Yardley v. ADP TotalSource, Inc.*, No. 13-cv-04639, 2014 WL 1496333, at *2 (C.D. Cal. Apr. 4, 2014) (litigation privilege did not render futile proposed counterclaim for breach of nondisclosure agreement); *USA Wheel & Tire Outlet # 2, Inc. v. United Parcel Serv. Inc.*, No. 13-cv-00403, 2014 WL 197733, at *3-4 (C.D. Cal. Jan. 14, 2014) (litigation privilege did not bar claim for breach of confidentiality agreement); *T.T. ex rel. Susan T. v. Cnty. of Marin*, No. 12-cv-02349-WHA, 2013 WL 308908, at *5-6 (N.D. Cal. Jan. 25, 2013) ("[a]fter weighing the public policy interests," concluding that the privilege did not apply because the breach of contract claim was based on "a separate promise independent of the litigation," and because "otherwise any effort

---

[3] This is not to say that it was acceptable for Equifax to publicly file Banga's complete Social Security number in the record.  It clearly was not.  *See, e.g.,* Fed. R. Civ. P. 5.2(a).

to enforce an otherwise valid litigation release could be hamstrung by invocation of the litigation privilege").

But Banga's breach of contract theory is clearly at odds with the policies underlying the privilege, i.e., "to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1063 (2006). Allowing her to proceed on a breach of contract claim based on the alleged violation of the Stipulated Protective Order would contravene each and every one of these policies. As I explained in the Prior Order, Banga had at her disposal multiple remedies for the filing of her unredacted credit reports in *Banga II* and the *Banga Appeal*. *See* Prior Order at 8. Suing for breach of contract was not one of them. *Cf. Pollock v. Superior Court*, 229 Cal. App. 3d 26, 29 (1991) (holding that the litigation privilege prohibited a lawyer from bringing a breach of contract claim against his opposing counsel for failing to follow through on a promise to take an upcoming mandatory settlement conference off calendar; stating that "the public policy of this state is not served by permitting attorneys to sue one another for omissions or representations made as officers of the court during the course of litigation").

Equifax's motion for summary judgment on Banga's first cause of action for breach of contract is GRANTED.

### III. BANGA'S THIRD CAUSE OF ACTION FOR VIOLATION OF THE FCRA

Banga accuses Equifax of willfully violating the FCRA, 15 U.S.C. § 1681b(e), by disseminating her credit information to third-party credit providers for promotional purposes "after she had elected to exclude her name from all preapproved credit offer[] mailing lists by credit grantors." SAC ¶ 36. She further alleges that this same conduct constituted a willful violation of 15 U.S.C. § 1681e in that "Equifax did not make any effort to verify its own record that [she] had elected to exclude her name from all preapproved credit offers mailing lists." *Id.*

#### A. Statutory Framework

Banga's FCRA claims rest on the complicated statutory framework governing the

distribution of credit information for promotional purposes. Under 15 U.S.C. § 1681b(e)(1),

> [a] consumer may elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency under [15 U.S.C. § 1681b(c)(1)(B)] in connection with a credit or insurance transaction that is not initiated by the consumer, by notifying the agency in accordance with [15 U.S.C. § 1681b(e)(2)] that the consumer does not consent to any use of a consumer report relating to the consumer in connection with any credit or insurance transaction that is not initiated by the consumer.

15 U.S.C. § 1681b(e)(1).

15 U.S.C. § 1681b(c)(1)(B) explains that a credit reporting agency may disclose information about a consumer for the purposes of a transaction "not initiated by the consumer" where, among other prerequisites, "the transaction consists of a firm offer of credit," and "there is not in effect an election by the consumer, made in accordance with [15 U.S.C. § 1681b(e)], to have the consumer's name and address excluded from lists of names provided by the agency." 15 U.S.C. § 1681b(c)(1)(B). Only limited categories of information may be disclosed pursuant to 15 U.S.C. § 1681b(c)(1)(B): "(A) the name and address of a consumer; (B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and (C) other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity." 15 U.S.C. § 1681b(c)(2).

15 U.S.C. § 1681b(e)(2) describes the two ways in which a consumer may notify a credit reporting agency of her decision to opt-out of the promotional distribution of her credit information: "through the notification system maintained by the agency;" or "by submitting to the agency a signed notice of election form issued by the agency." 15 U.S.C. § 1681b(e)(2). If a consumer uses the "notification system" to opt-out, the credit reporting agency must cease promotional distribution of the consumer's credit information for a period of five years. 15 U.S.C. § 1681b(e)(4)(B)(i). If the consumer submits to the agency a "signed of notice of election form issued by the agency," the credit reporting agency must cease promotional distribution of the consumer's credit information permanently, or until the consumer requests that the promotional block be removed. 15 U.S.C. § 1681b(e)(4)(B)(ii).

11

Under 15 U.S.C. § 1681e(a), also cited by Banga,

> Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

15 U.S.C. § 1681e(a).

A defendant who "willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer" for "any actual damages sustained by the consumer as a result of the failure," or for statutory damages "of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). Willful violation of the FCRA also triggers liability for "such amount of punitive damages as the court may allow," and for "reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(1)(B)-(C). An FCRA violation is willful where it is made either knowingly or with reckless disregard for the requirements imposed under the Act. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-60 (2007); *see also Robins v. Spokeo, Inc.*, 742 F.3d 409, 411 n.1 (9th Cir. 2014) *cert. granted on other grounds*, 135 S. Ct. 1892 (2015) ("Willful violations within the meaning of 15 U.S.C. § 1681n include violations in reckless disregard of statutory duty.") (internal quotation marks and alterations omitted). A defendant acts with "reckless disregard" for the purposes of the FCRA where its actions involve "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68 (internal quotation marks omitted).

In contrast with willful violations, mere negligent violations do not provide a basis for statutory damages under the FCRA. Recovery for negligent violations is limited to actual damages and attorney's fees and costs under 15 U.S.C. § 1681o.

**B. Analysis**

In her SAC, her opposition brief, and the declaration submitted in conjunction with her

opposition brief, Banga identifies six instances in which she "elected to exclude her name from all preapproved credit offers mailing lists by credit grantors," SAC ¶ 36, yet Equifax continued to provide her credit information to third-party credit providers for promotional purposes.

The first and second were on April 14, 2003, when Banga alleges that she called 888-567-8688 and "elected to exclude her name permanently," and on July 10, 2003, when she "signed and returned the Notice of Election to Opt-Out to the address . . . jointly established and maintained by nationwide credit reporting agencies." SAC ¶ 13.

The third was on October 15, 2010, when Banga states that she again called 888-567-8688 and again placed a temporary block on her credit file. Banga Decl. ¶ 6. She then requested a copy of her credit report to confirm that the temporary block had been put in place. Banga received a credit report in response to this request, an excerpt of which she attached as an exhibit to her declaration, that includes an "ALERT" stating, "File Blocked for Promotional Purposes." Banga Decl. Ex. C (Dkt. No. 94). According to Equifax, this "ALERT" was included in Banga's credit report because in June 2006, Equifax had placed a five-year promotional block on Banga's credit file which remained in effect in October 2010. *See* Smith Decl. ¶¶ 19-21 (Dkt. No. 86-1).

The fourth was on December 11, 2012, when, after checking her Equifax credit report online and seeing that Equifax had provided her credit information to various third-party credit providers in 2011 and 2012, Banga again called Equifax and again requested that Equifax stop distributing her credit information for promotional purposes. Banga Decl. ¶¶ 10-11.

The fifth was on January 20, 2013, when Banga sent Equifax a letter memorializing her December 11, 2012 call and instructing Equifax to "stop selling my credit reports for promotional purposes to anyone." Banga Decl. Ex. G (Dkt. No. 94).

The sixth was another letter to Equifax, this one dated February 27, 2013, referencing the January 20, 2013 letter and requesting "an explanation as to why Equifax has continued to sell my credit reports to the creditors for promotional purposes." Banga Decl. Ex. H (Dkt. No. 94).

In a letter dated March 8, 2013, Equifax wrote to Banga stating, "We received your request concerning your Equifax credit file. However, with the information you provided, Equifax was unable to locate a credit file." Banga Decl. Ex. I (Dkt. No. 94). Equifax asked that Banga

1  resubmit her request with additional identifying information. *Id.* On April 3, 2013, Equifax

2  received a letter from Banga dated March 24, 2013 requesting a permanent promotional block on

3  her credit file. Smith Decl. ¶ 22. Equifax entered the permanent promotional block on April 5,

4  2013. *Id.* ¶ 23. Banga does not contend that there have been any instances of Equifax selling her

5  credit information to third-party credit providers for promotional purposes since then.[4]

6      Equifax contends that none of the six communications alleged by Banga adequately

7  establish that it was required to cease the promotional distribution of her credit information. I

8  agree with Equifax with respect to most of the alleged communications. Banga's alleged call to

9  888-567-8688 on October 15, 2010, however, creates a genuine dispute of material fact that

10  precludes summary judgment on Banga's FCRA cause of action.

11      The alleged April 14, 2003 telephone call fails to support Banga's FCRA claims because a

12  telephone call through the credit reporting agency's reporting system triggers a promotional block

13  for only five years. *See* 15 U.S.C. § 1681b(e)(4)(B)(i). None of the alleged promotional

14  distributions underlying Bang's FCRA claims are within five years of April 14, 2003.

15      The alleged July 10, 2003 "Notice of Election to Opt-Out" fails to support Banga's FCRA

16  claims because, in her opposition brief, Banga explicitly disclaims any reliance on that notice.

17  Opp. at 13 (Dkt. No. 97).

18      The December 11, 2012 telephone call fails because Banga does not allege that the call

19  was to the appropriate telephone number (i.e., 888-567-8688).[5] Similarly, the January 20, 2013

20  and February 27, 2013 letters are insufficient to withstand summary judgment because it is clear

21  the letters were not the "signed notice of election form issued by the agency." 15 U.S.C. §

---

[4] Although the SAC identifies one promotional distribution that occurred on "08/17/13," *see* SAC ¶ 15, Banga did not dispute at oral argument that this is a typographical error, and that Equifax has not sold her credit information for promotional purposes since entering the permanent promotional block on April 5, 2013.

[5] At the hearing, in arguing for liability based on the December 11, 2012 telephone call, Banga emphasized that one of the exhibits submitted in conjunction with her opposition brief shows that "Equifax Consumer Services" made an "inquiry" into her credit information on December 11, 2012. *See* Banga Decl. Ex. F (Dkt. No. 94). I agree that this document supports the allegation (undisputed by Equifax) that Banga contacted Equifax on December 11, 2012. But Banga does not explain how the document shows that she called the appropriate telephone number on December 11, 2012, and, as stated above, she does not even allege that she did.

1681b(e)(2). Banga cites no authority indicating that a written notice other than the "notice of election form issued by the agency" is sufficient to trigger a temporary or permanent promotional block.

With respect to Banga's alleged call to 888-567-8688 on October 15, 2010, Equifax contends that the call fails to support Banga's claims because, with the exception of Banga's declaration and deposition testimony, *see* Banga Decl. ¶ 6, Ex. B, there is no evidence that the call in fact occurred. *See* Mot. at 23-24. Pamela Smith, a Legal Support Associate at Equifax, submits a declaration stating that, according to Equifax's records, a five-year block was placed on Banga's credit file in June 2006, and that on October 25, 2010, Banga telephoned Equifax to request a credit report, which Equifax provided on that date. Smith Decl. ¶¶ 19-21. The Smith declaration contains no information about the alleged October 15, 2010 call, i.e., it neither asserts nor denies that the call occurred.

Equifax is correct that when a party opposing summary judgment "relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993); *accord F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). But Equifax has not shown that this principle entitles it to summary judgment in this case. Banga's declaration is not a model of precise legal writing. But contrary to Equifax's characterization, the declaration goes well beyond "conclusory allegations unsupported by factual data." *Hansen*, 7 F.3d at 128. Banga identifies the specific date on which she called Equifax, the specific number she used to call it, and the specific selection she made during the call to request a temporary promotional block (i.e., "option # 1"). Banga Decl. ¶ 6. She also explains that she chose a temporary promotional block "because in the underlying litigation [– i.e., *Banga II* – ] Equifax maintained that it never received [her] written request to block [her] credit file permanently." *Id.* And she states that "[t]o confirm that [her] credit file had been blocked properly in according with [her] request . . . , [she] requested a copy of [her] credit report" on October 25, 2010. *Id.*

15

The only evidence arguably controverting Banga's narrative of the October 15, 2010 call is the Smith declaration, which is completely silent on whether or not the call occurred. Equifax also contends that, because Banga had requested a temporary promotional block in June 2006 which remained in effect on October 15, 2010, any request for a temporary promotional block by her on October 15, 2010 would be superfluous and would not require any action by Equifax (e.g., extending the temporary promotional block until October 2015). *See* Mot. at 23-24.[6] Equifax cites no authority for this interpretation of the FCRA. Its counsel conceded at oral argument that this is a practice of Equifax's, not a procedure prescribed by law. Indeed, it would be an odd law that would require a consumer to wait until her temporary promotional block had lapsed before she could reinstate it, as Equifax's practice apparently requires. On this record, there is a genuine factual dispute whether Banga's alleged telephone call on October 15, 2010 required Equifax to cease promotional distribution of her credit information through October 2015.

Equifax also contends that Banga's FCRA claims fail because she has not produced sufficient evidence of damages. *See* Suppl. Br. at 3-5 (Dkt. No. 93). I disagree. Banga's emotional distress allegations are sufficient to support her FCRA claims against Equifax's summary judgment motion. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332-33 (9th Cir. 1995) (holding that the term "actual damages," as used in the FCRA, "include[s] recovery for emotional distress and humiliation"); *accord Drew v. Equifax Info. Servs. LLC*, 690 F.3d 1100, 1109 (9th Cir. 2012) ("The FCRA permits recovery for emotional distress and humiliation.") (internal quotation marks omitted). Equifax faults Banga for failing to recollect at her deposition when exactly she purchased over-the-counter medications for her claimed mental distress, fatigue, and headaches caused by Equifax's misconduct, but Equifax cites no authority indicating that such specificity is required. *See* Suppl. Br. at 3-5. Likewise, Equifax fails to cite any authority to support its argument that Banga's admission to receiving no professional medical treatment as a result of Equifax's alleged misconduct precludes her as a matter of law from recovering for emotional distress damages. *See id.* at 4-5; *see also Grigoryan v. Experian Info.*

---

[6] At oral argument, counsel for Equifax did not dispute Banga's narrative of the October 15, 2010 was accurate and focused instead on this superfluous request argument.

*Sols., Inc.*, 84 F. Supp. 3d 1044, 1086 (C.D. Cal. 2014) (in FCRA case, stating that "district courts in the Ninth Circuit do not require objective evidence of emotional distress, but instead allow a plaintiff's testimony alone to support an award of emotional distress damages") (citing cases); *Shuman v. Standard Oil Co. of California*, 453 F. Supp. 1150, 1154 (N.D. Cal. 1978) (in a case involving claims under the Equal Credit Opportunity Act, holding that the plaintiff "raised a genuine issue as to her emotional harm by deposition testimony that she was 'infuriated,' 'angry,' 'upset' and 'felt an injustice had been done' that needed to be rectified"). On summary judgment, it is not my job to assess the strength of this damages claim. Banga has established a triable issue of fact on damages.

At the hearing, Equifax raised a new argument that, even assuming that its failure to extend Banga's temporary promotional block based on her October 15, 2010 telephone call was a violation of the FCRA, any claims based on that failure would be time-barred under the FCRA's two-year statute of limitations. The problem with this argument, besides the fact that it was not raised in Equifax's summary judgment motion, is that the FCRA's two-year limitations period is triggered by the "discovery by the plaintiff of the violation." 15 U.S.C. § 1681p; *see also Banga v. Equifax Info. Servs., LLC*, 473 F. Appx. 712, 713 (9th Cir. 2012) (in the *Banga Appeal*, stating that "the district court properly granted summary judgment on statute of limitations grounds because Banga failed to file her action within two years of when she knew or should have known that defendant disclosed her credit report to third parties for promotional or other improper purposes"). Nothing in the record indicates that Banga knew or should have known before December 2012 that her temporary promotional block had not been extended. As the Hon. Joseph C. Spero explained in yet another FCRA case filed by Banga in this district, "[t]he ultimate burden is on the defendant to demonstrate that a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Banga v. Chevron U.S.A. Inc.*, No. 11-cv-01498-JCS, 2013 WL 71772, at *12 (N.D. Cal. Jan. 7, 2013) (internal quotation marks and emphasis omitted); *accord Drew*, 690 F.3d at 1110. Equifax has not satisfied this burden.

While Banga's cause of action for violation of the FCRA may proceed, I agree with Equifax that Banga has failed to produce sufficient evidence of willfulness. The only theory of

17

1 liability that survives summary judgment is based on Equifax's alleged failure to extend the
2 temporary promotional block on Banga's credit file in response to her October 15, 2010 telephone
3 call. Her other communications did not satisfy FCRA requirements and, even if they did, do not
4 support a finding of knowing or reckless disregard of Equifax's duties under the FCRA. Nor does
5 the FTC consent order that Banga attached to her declaration and highlighted at oral argument.
6 *See* Banga Decl. Ex. M (Dkt. No. 94). That consent order concerns a course of conduct that has
7 nothing to do with failing to honor opt-out requests, the complained-of conduct here. Banga has
8 not presented evidence from which a juror could reasonably conclude that Equifax's failure to
9 extend her temporary promotional block was willful. Equifax's motion for summary judgment on
10 willfulness is GRANTED.

## CONCLUSION

For the foregoing reasons, Equifax's motion for summary judgment is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to Banga's first, second, fourth, and fifth causes of action. It is also GRANTED with respect to willfulness and all claims for a negligent violation of the FCRA except for one: it is DENIED with respect to the telephone call on October 15, 2010.

**IT IS SO ORDERED**.

Dated: February 25, 2016



WILLIAM H. ORRICK
United States District Judge